UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Mashud Yoda

    v.                                      Case No. 21-cv-556-JL

FCI Berlin, Warden

**REPORT AND RECOMMENDATION**

The respondent, the Warden of the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"), moves for summary judgment (Doc. No. 8) on Mashud Yoda's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Pet., Doc. No. 1; Pet. Suppl., Doc. No. 6). Mr. Yoda, who is incarcerated at FCI Berlin, Pet. (Doc. No. 1 at 1), challenges a Bureau of Prisons ("BOP") disciplinary proceeding and decision that resulted in the loss of good conduct time, as violative of his Fifth Amendment due process rights. Specifically, Mr. Yoda challenges that proceeding and decision on the following grounds: he did not receive notice of what constituted prohibited behavior under the relevant disciplinary code; he was innocent of the charged offense, and so the discipline hearing officer ("DHO") lacked sufficient evidence to find him guilty; and the DHO demonstrated partiality against him. See id. at 2-3; accord Pet'r's Rebuttal to His 2241 Pet. (hereinafter "Yoda Obj. I") (Doc. No. 9 at 1).[1]

---

[1] The court construes Mr. Yoda's "Rebuttal to His 2241

The Warden disagrees, arguing that sufficient evidence supported the DHO's decision finding Mr. Yoda guilty of the charged disciplinary offense, Resp't's Mot. for Summ. J. (Doc. No. 8 at 2-3), and Mr. Yoda failed to administratively exhaust his claim on the DHO's impartiality, id. at 4.  Mr. Yoda filed objections to the Warden's motion.  See Yoda Obj. I (Doc. No. 9); Yoda Obj. II (Doc. No. 11).

Because the Warden failed to address Mr. Yoda's notice claim, the district judge should direct the Warden to file a motion for summary judgment on this issue.  The DHO's decision was supported with sufficient evidence, however, and Mr. Yoda failed to administratively exhaust his claim on the DHO's partiality, so the district judge should grant the Warden's motion for summary judgment, which addresses those two claims.

I.   **Summary Judgment Standard**

"Summary judgment is appropriate when the moving party shows that 'there is no genuine dispute as to any material fact and the mov[ing party] is entitled to judgment as a matter of

---

Petition" (Doc. No. 9) and "Response to Motion for Summary for Summary Judgement" (Doc. No. 11) as Objections to the Motion for Summary Judgment and identifies those documents as "Yoda Obj. I" and "Yoda Obj. II," respectively.  Cf. Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75-76 (1st Cir. 2014) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)) (construing liberally a pro se petitioner's pleadings).

2

law.'" Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 87 (1st Cir. 2020) (quoting Fed. R. Civ. P. 56). "A genuine dispute is 'one that must be decided at trial because the evidence, viewed in the light most flattering to the [party opposing summary judgment], would permit a rational factfinder to resolve the issue in favor of either party.'" Id. (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). The party opposing summary judgment "must adduce specific facts showing that a trier of fact could reasonably find in his favor," Johnson v. Johnson, 23 F.4th 136, 141 (1st Cir. 2022) (internal quotation marks omitted) (quoting Brader v. Biogen Inc., 983 F.3d 39, 53 (1st Cir. 2020)), and "cannot rely on 'conclusory allegations, improbable inferences, and unsupported speculation'" when doing so, id. (quoting Brader, 983 F.3d at 53; Medina-Muñoz, 896 F.2d at 8).

When considering summary judgment motions, to "determin[e] if a genuine dispute of material facts exists," Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 93 (1st Cir. 2021), the court "'look[s] to all of the record materials on file, including the pleadings, depositions, and affidavits' without evaluating 'the credibility of the witnesses or weighing the evidence,'" id. (alterations omitted) (quoting Ahmed v. Johnson, 752 F.3d 490, 495 (1st Cir. 2014)). When reviewing these materials, the court "read[s] the facts in the light most

3

favorable to the [party opposing summary judgment] and grant[s] all reasonable inferences in his favor." Lachance v. Town of Charlton, 990 F.3d 14, 20 (1st Cir. 2021).

## II.  Background

Mr. Yoda challenges a DHO decision finding him guilty of improperly using a security device, in violation of BOP Prohibited Act Code ("Code") 208, after he rang the duress alarm in his cell to obtain a cup for water to take his anti-anxiety medication.  See Pet. (Doc. No. 1 at 2); see also Resp't's Mot. for Summ. J. (Doc. No. 8 at 1).  Code 208 forbids "destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure."  28 C.F.R. § 541.3 tbl.1.  Mr. Yoda's version of events giving rise to this disciplinary action differs from that presented by the BOP; at this stage, the court "read[s] the facts in the light most favorable to" Mr. Yoda.  See Lachance, 990 F.3d at 20.

On January 1, 2021, at approximately 4:36 p.m., BOP Officer Chadderton "was escorting medical staff" through FCI Berlin when he responded to a duress alarm coming from Mr. Yoda's cell. Incident Report, Jan. 1, 2021, Attach. to Ex. E to Resp't's Mot. for Summ. J. (Doc. No. 8-6 at 1 ¶ 11).  Officer Chadderton did not bring any medical staff member with him while responding to the duress alarm.  Pet. (Doc. No. 1 at 2); cf. Incident Report

4

(Doc. No. 8-6 at 1 ¶ 11) (omitting any mention of medical staff accompanying the officer to Mr. Yoda's cell).  Mr. Yoda explained to Officer Chadderton that he needed a cup for water to take his medication, of which he was "in dire need" because he was suffering from "suicidal thoughts."  Pet. (Doc. No. 1 at 2); Pet. Suppl. (Doc. No. 6 at 1).  But see Incident Report (Doc. No. 8-6 at 1 ¶ 11) (omitting from the officer's report any mention by Mr. Yoda of suicidal ideation or medication).

Officer Chadderton indicated to Mr. Yoda that needing a cup did not qualify as a medical emergency and "any further improper use of his duress alarm would lead to further similar incident reports."  Incident Report (Doc. No. 8-6 at 1 ¶ 11); accord Pet. (Doc. No. 1 at 1).  Mr. Yoda countered, "[T]his is an emergency."  Incident Report (Doc. No. 8-6 at 1 ¶ 11).  In the Incident Report that followed, Officer Chadderton wrote that he "verif[ied] that inmate Yoda was not under any legitimate duress and was not having a legitimate medical emergency that posed a risk to his safety or that of his cellmate . . . ."  Id.

Officer Chadderton issued an Incident Report on January 1, 2021 at 5:15 p.m., id. at ¶ 13, and staff delivered it to Mr. Yoda by 6:20 p.m., id. at ¶ 16.  Two days later, on January 3, 2021, Mr. Yoda went before the Unit Disciplinary Committee ("UDC").  Id. at ¶¶ 17, 21.  Mr. Yoda told the UDC that he pulled the duress alarm because he "didn't have a cup to take

5

[his] meds for anxiety." Id. at ¶ 17. Given the severity of the charge, the UDC automatically referred Mr. Yoda's disciplinary matter to the DHO, id. at ¶¶ 18(B), 19; Decl. of Nichole Hayden, DHO (hereinafter DHO Decl.) (Doc. No. 8-1 at 3 ¶ 9), and recommended loss of good conduct time and email privileges as a sanction, if the DHO found that Mr. Yoda committed the charged offense, Incident Report (Doc. No. 8-6 at 1 ¶ 20).

On January 12, 2021, DHO Nichole Hayden conducted a hearing on the charge against Mr. Yoda. DHO Report, Jan. 15, 2021, Attach. to Ex. I to Resp't's Mot. to Summ. J. (Doc. No. 8-10 at 1 ¶ I(B)); DHO Decl. (Doc. No. 8-1 at 1 ¶ 1). At that hearing, Mr. Yoda verbally denied the charge, explaining that he "wasn't thinking straight" when he rang the alarm to ask for a cup. DHO Report (Doc. No. 8-10 at 1 ¶ III(A)-(B)); accord DHO Decl. (Doc. No. 8-1 at 3 ¶ 12). In a written statement to DHO Hayden, Mr. Yoda elaborated on his state of mind at the time he hit his duress alarm. See Pet'r's Statement to DHO, Jan. 1, 2021, Attach. to Ex. K to Resp't's Mot. for Summ. J. (Doc. No. 8-12). He said that, earlier on the day of the incident, BOP staff changed his cell, and, in the process, someone disposed of his cup. Id. at 1. Within a few hours, he needed to take his medication but no longer had the cup that he usually used. Id. He felt like harming himself and rang the duress alarm when he

6

saw medical staff walk by his cell, seeking the attention of a medical professional for what he perceived as a medical emergency.  See id.  Mr. Yoda believed that, when he rang the duress alarm under these circumstances, he was obeying directions from his psychologist regarding his mental health concerns and the prison rules.  Id. at 2.

Mr. Yoda requested a witness, prisoner Hector Velez, for his disciplinary hearing.  DHO Report (Doc. No. 8-10 at ¶ III(C)(4)).  Mr. Velez submitted a written statement, saying that Mr. Yoda "was asking [the] officer for [a] cup so he could take his meds promply (sic)," Velez Statement, Attach. to Ex. J to Resp't's Mot. for Summ. J. (Doc. No. 8-11); accord DHO Report (Doc. No. 8-10 at 2 ¶ V).  When DHO Hayden considered this statement, she noted in her written report that Mr. Velez was not Mr. Yoda's cellmate, and that Mr. Yoda did not call his cellmate as a witness.  DHO Report (Doc. No. 8-10 at 2 ¶ V).

In addition to evaluating Mr. Yoda's and Mr. Velez's written statements, DHO Hayden took into account Officer Chadderton's Incident Report, statements Mr. Yoda made during the hearing, and a "supporting memorandum" submitted by another BOP staff member, Officer Couture.  Id.  Officer Couture corroborated that Officer Chadderton "verif[ied]" whether Mr. Yoda "was having an emergency" before explaining "that [the] duress alarm was for emergencies only."  Id.; accord Couture

7

Memo, Jan. 1, 2021, Attach. to Ex. F to Resp't's Mot. for Summ. J. (Doc. No. 8-7). Officer Couture next heard Mr. Yoda say that he was having "an emergency" and "need[ed] a cup." DHO Report (Doc. No. 8-10 at 2 ¶ V). At the hearing, DHO Hayden explained to Mr. Yoda that, rather than ring the duress alarm for a cup, he could have drunk water directly from the sink in his cell to take his medication. See id.

DHO Hayden found, "based on the greater weight of the evidence, that being the written account of the incident and evidence provided," id. at 3 ¶ V, that Mr. Yoda "committed prohibited act 208" by misusing a security device, id. at ¶ VII. As a sanction for this behavior, Mr. Yoda lost seven days of good conduct time and email privileges for one month. Id. at ¶ VI. Mr. Yoda received a copy of the DHO Report on January 15, 2021 at 9:20 a.m. Id. at ¶ IX.

Thereafter, Mr. Yoda filed administrative appeals unsuccessfully challenging the DHO's decision and resulting sanctions. See Admin. Remedy Resp., May 6, 2021, Attach. to Ex. L to Resp't's Mot. for Summ. J. (Doc. No. 8-13 at 3) (denying Regional Office appeal); Admin. Remedy Resp., May 11, 2021 (Doc. No. 1 at 7) (denying Central Office appeal). In both appeals, Mr. Yoda argued that DHO Hayden lacked sufficient evidence to find him guilty of the charged Code violation as he presented evidence at the hearing that supported his innocence based on

his belief that he pulled the alarm during a bona fide medical emergency. See Reg'l Admin. Remedy Appeal (Doc. No. 8-13 at 1-2); Central Off. Admin. Remedy Appeal (Doc. No. 1 at 8-9).[2]  Mr. Yoda also argued that he lacked notice as to what conduct qualified as a medical emergency to avoid punishment under Code 208. See Reg'l Admin. Remedy Appeal (Doc. No. 8-13 at 1); Central Off. Admin. Remedy Appeal (Doc. No. 1 at 8).

### III. Discussion

Mr. Yoda contends that the DHO's findings against him violated his due process rights on three grounds: (A) he did not have notice of what constituted prohibited conduct, (B) he did not commit the infraction with which he was charged and so the DHO lacked sufficient evidence to find him guilty, and (C) the DHO lacked impartiality. E.g., Pet. (Doc. No. 1 at 2-3); Yoda Obj. I (Doc. No. 9 at 1).

**A.   Due Process for Disciplinary Proceedings**

"[D]ue process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in

---

[2] The Warden also filed a copy of Mr. Yoda's Central Office Administrative Remedy Appeal (Doc. No. 8-14), labeled "Third Copy: Warden's Administrative Remedy File." Mr. Yoda attached a copy of the appeal to his petition (Doc. No. 1), and his copy is labeled "Original: Return to Inmate." See Central Off. Admin. Remedy Appeal (Doc. No. 1 at 8). The handwritten appeals are slightly different, but because Mr. Yoda's copy is date stamped as received by the Administrative Remedy Section of the Federal BOP, the court relies upon the copy he filed.

9

good time credits." Superintendent v. Hill, 472 U.S. 445, 453 (1985) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)). For a BOP disciplinary hearing, these due process procedural protections include "written notice of the charges at least twenty-four hours in advance of the hearing," Surprenant v. Rivas, 424 F.3d 5, 16 (1st Cir. 2005) (citing Wolff, 418 U.S. at 564); "the ability to call witnesses and present documentary evidence," id. (citing Wolff, 418 U.S. at 566); "an impartial decisionmaker," id. (citing Wolff, 418 U.S. at 570-71); and "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action," Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at 563-67).

After a hearing, when a DHO disallows good time credits as a penalty for a disciplinary violation, due process requires the support of that decision by "some evidence in the record." Id. The DHO's decision satisfies this standard when "any evidence in the record" exists "that could support the conclusion reached . . . ." Id. at 455-56. "The evidentiary requirement in reviewing prison disciplinary actions is met even when the evidence 'might be characterized as meager'; it simply must not be 'so devoid of evidence as to make the findings of the institution without support or otherwise arbitrary.'" Brown v. Kallis, No. 21-cv-920 (PJS/ECW), 2022 U.S. Dist. LEXIS 92674, at *27-28, 2022 WL 1652933, at *8 (D. Minn. Apr. 21, 2022) (quoting

10

Hill, 472 U.S. at 457; Flowers v. Anderson, 661 F.3d 977, 980 (8th Cir. 2011))), R&R adopted, 2022 U.S. Dist. LEXIS 92665, at *1, 2022 WL 1645666, at *1 (D. Minn. May 24, 2022). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 456.

**B.   Mr. Yoda's Due Process Claims**

   1.   Notice of Violative Conduct

Mr. Yoda has argued in his administrative appeals and in his filings before this court that he lacked notice of what constituted a medical emergency that qualified him to ring his duress alarm.  See Reg'l Admin. Remedy Appeal (Doc. No. 8-13 at 2); Central Off. Admin. Remedy Appeal (Doc. No. 1 at 8-9); Pet. (Doc. No. 1 at 3); Yoda Obj. I (Doc. No. 9 at 1); Yoda Obj. II (Doc. No. 11 at 2 ¶ 2).  Because the Warden did not address this argument in his motion for summary judgment, the district judge should direct the Warden to file a motion for summary judgment on this issue.

   2.   Sufficient Evidence

Throughout his disciplinary proceedings, administrative challenges, and pleadings before this court, Mr. Yoda has argued that he did not commit a Code 208 violation because he was

11

having a genuine medical emergency, see Pet'r's Statement to DHO (Doc. No. 8-12 at 1); Reg'l Admin. Remedy Appeal (Doc. No. 8-13 at 1-2); Central Office Admin. Remedy Appeal (Doc. No. 1 at 8); Pet. (Doc. No. 1 at 2, 3); Pet. Suppl. (Doc. No. 6 at 1); Yoda Obj. I (Doc. No. 9 at 1); Yoda Obj. II (Doc. No. 11 at 1-2 ¶ 1, 2 ¶ 3, 2-4 ¶ 4), and, therefore, the DHO lacked sufficient evidence to find Mr. Yoda guilty of the charged violation. The DHO found Mr. Yoda guilty of "destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure," § 541.3 tbl.1, when he activated his duress alarm to obtain a cup, rather than to notify FCI Berlin staff that he was experiencing a bona fide medical emergency. See DHO Report (Doc. No. 8-10 at 2-3 ¶ V); DHO Decl. (Doc. No. 8-1 at 3-4 ¶ 13).

To comport with Mr. Yoda's due process rights, DHO Hayden must have supported her decision with a "written statement . . . of the evidence relied on" in reaching that decision. See Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at 563-67). The "evidence relied on" must amount to "some evidence," id., a standard met by pointing to "any evidence in the record" in "support [of] the conclusion reached," id. at 455-56. "Even when there is substantial evidence to the contrary," the DHO "may find [an incident] report to be credible and therefore take disciplinary action." Brown, 2022 WL 1652933 at *8 (internal

12

quotation marks omitted) (quoting Hrbek v. Nix, 12 F.3d 777, 781 (8th Cir. 1993)); Hill, 472 U.S. at 457 ("The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached . . . .").

DHO Hayden's decision met this standard when she issued her written report indicating the evidence upon which she relied to support her conclusion that Mr. Yoda violated Code 208. See DHO Report (Doc. No. 8-10 at 2–3 ¶ V). She noted that she considered Officer Chadderton's "written account of the incident;" Officer "Couture's supporting memorandum" on the incident; Mr. Yoda's "witness'[s] statement"; and statements made by Mr. Yoda "to the investigating official," "during [his] UDC hearing," and "during the DHO hearing," as well as the "handwritten statement" he submitted to the DHO. DHO Report (Doc. No. 8-10 at 2 ¶ V); accord DHO Decl. (Doc. No. 8-1 at 3 ¶ 13). Ultimately, she "found [Mr. Yoda's] version of events — specifically the allegation that he told Officer Chadderton that he felt like harming himself or someone — was not credible when weighed against the other evidence," DHO Decl. (Doc. No. 8-1 at 4 ¶ 13), especially given that Mr. Yoda did not mention those feelings during his UDC review and that those statements were not supported by Officer Chadderton's, Officer Couture's, or Mr. Velez's statements. Id. DHO Hayden's decision, therefore, was supported by "some evidence in the record," Hill, 472 U.S. at

13

454, in satisfaction of Mr. Yoda's due process rights, even if Mr. Yoda testified to the contrary, see id. at 457; Brown, 2022 WL 1652933 at *8 (internal quotation marks omitted) (quoting Hrbek, 12 F.3d at 781).

Because "a trier of fact could [not] reasonably find" that no evidence supported the DHO's decision, see Johnson, 23 F.4th at 141, a genuine dispute of material fact does not remain as to whether sufficient evidence supported DHO Hayden's determination that Mr. Yoda misused his duress alarm, see Baum-Holland, 964 F.3d at 87.  The district judge should, therefore, grant the Warden's motion for summary judgment on this claim.

3.   DHO's Partiality

Mr. Yoda suggests that DHO Hayden failed to act as "an impartial decisionmaker," Surprenant, 424 F.3d at 16 (citing Wolff, 418 U.S. at 570-71), because of her preexisting relationships with staff at FCI Berlin in her prior role as a lieutenant, see Pet. (Doc. No. 1 at 2); see also DHO Decl. (Doc. No. 8-1 at 1 ¶ 1).  The Warden argues that Mr. Yoda failed to administratively exhaust this claim.  Resp't's Mot. for Summ. J. (Doc. No. 8 at 4).  Based on the record provided by both parties, the Warden is entitled to summary judgment on this claim.

"In general, a § 2241 petitioner must exhaust available

14

administrative remedies before [he] can obtain relief in federal court." Shorter v. Warden, 803 F. App'x 332, 336 (11th Cir. 2020) (quoting Santiago-Lugo v. Warden, 785 F.3d 467, 474–75 (11th Cir. 2015)); accord Millhouse v. Lewisburg, 666 Fed. App'x 98, 100 (3rd Cir. 2016) (citing Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3rd Cir. 1996)). "Proper exhaustion requires that a petitioner assert an issue or claim at every administrative level." Millhouse, 666 Fed. App'x at 100 (citing Moscato, 98 F.3d at 761). When challenging the outcome of a BOP disciplinary proceeding, a federal prisoner must raise his claims in regional and central office appeals. Id.; accord 28 C.F.R. §§ 542.14(d)(2), 542.15.

Mr. Yoda first alleged that DHO Hayden lacked impartiality in his petition before this court. See Pet. (Doc. No. 1 at 2-3). This claim does not appear in either of his administrative appeals. See Reg'l Admin. Remedy Appeal (Doc. No. 8-13 at 1-2); Central Off. Admin. Remedy Appeal (Doc. No. 1 at 8-9). Mr. Yoda, therefore, failed to administratively exhaust his claim that DHO Hayden was biased against him. See 28 C.F.R. §§ 542.14(d)(2), 542.15; Millhouse, 666 Fed. App'x at 100. For this reason, the district judge should grant the Warden's motion for summary judgment on this claim.

**IV.   Conclusion**

For the foregoing reasons, the district judge should grant the Warden's motion for summary judgment (Doc. No. 8) on Mr. Yoda's claims that the DHO lacked sufficient evidence to find him guilty of a Code 208 violation and that the DHO was biased against him.  The district judge should also issue the following order:

> The respondent is granted leave to file a properly supported motion for summary judgment addressing Mr. Yoda's claim alleging that he did not have adequate notice of what constituted prohibited conduct under Code 208 and, therefore, that the guilty finding by the DHO and resulting loss of good conduct time violates his Fifth Amendment due process rights. The summary judgment motion is due thirty days after the issuance of the Order approving this Report and Recommendation.
>
> Mr. Yoda is granted thirty days to respond to the Warden's motion for summary judgment regarding his notice claim.
>
> If this Report and Recommendation is not approved, the Court will issue a separate procedural order at that time.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). "Only those issues fairly raised by the objections to" this Report and Recommendation "are subject to review in the district court and those not preserved by such objection are precluded on appeal." Id. (citations omitted).

_____
Andrea K. Johnstone
United States Magistrate Judge

July 14, 2022

cc:  Mashud Yoda, pro se
     Seth R. Aframe, Esq., U.S. Attorney's Office